**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TRACI K. STEVENSON, as
Chapter 7 Trustee for Nasser Ayyoub
and Wendy Ayyoub,

    Appellant,

v.                                                                Case No: 8:15-cv-2745-T-30

CORPORATION OF LLOYD'S, et al.,

    Appellees.
_____/

# ORDER

THIS CAUSE comes before the Court on appeal of the bankruptcy court's order dismissing Counts I and II of Trustee Traci K. Stevenson's second amended complaint filed in an adversary proceeding against Appellees.[1]  Upon review, the Court concludes that the bankruptcy court's decision should be affirmed.

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

A district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law de novo.  *See In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993).

---

[1] The Trustee's second amended complaint contained five counts which were dismissed by the bankruptcy court, but the Trustee only appeals dismissal of Counts I and II.

Similarly, issues related to preclusion, such as the application of res judicata are reviewed de novo. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001).

## BACKGROUND

Nasser and Wendy Ayyoub (the "Debtors") owned a convenience store doing business as Best for Less Food Mart, Inc. ("Best for Less") in Apollo Beach, Florida. In February 2007, the Debtors, through their general lines insurance agent Fernandez Insurance, Inc. ("Fernandez"), obtained a surplus lines commercial package insurance policy from Appellees (the "2007 Policy") to provide coverage for Best for Less. Fernandez procured the 2007 Policy from Tapco Underwriters, Inc.'s ("Tapco") surplus lines agent.

Prior to expiration of the 2007 Policy, Tapco sent Fernandez a quote to renew the policy, which stated that coverage excluded "punitive" and "liquor" liability claims. (December 3, 2007 Quote, Appellee's Tab 1-1). Tapco also sent Fernandez a renewal notice, which provided that the coverage would be "same as expiring." (Renewal Notice, Appellee's Tab 3-1). The renewal notice instructed that coverage may be bound by faxing a "binder request." (*Id.*). On February 18, 2008, after receiving a second quote from Tapco substantially similar to the first quote, Fernandez sent a signed "Renewal Binder FAX Request," which requested that Tapco bind insurance coverage pursuant to the renewal offer.[2] (Renewal Binder Fax Request, Appellee's Tab 3-2; February 18, 2008 Quote, Appellee's Tab 1-2).

---

[2]These documents were not attached to the Trustee's second amended complaint, but were attached to the first amended complaint. The Trustee argues that the Court cannot consider these documents on appeal because they were not attached to the second amended complaint, and therefore could not be considered by the bankruptcy court

That same day, Tapco sent Fernandez a Binder Invoice (the "Binder"). (Binder, Appellant's Tab B, Ex. F). The Binder provided: "Please note that this binder is for temporary insurance for a twelve-day period. This binder exists on its own terms and expires on its own terms, no coverage exists thereafter." (*Id.*). As part of the renewal process, Fernandez also sent Tapco a commercial package application (the "Application") and premium check, which Tapco received on March 4, 2008. (Application, Appellant's Tab B, Ex. D). The Application provided: "I . . . agree that if a policy issued pursuant to this application, the application shall become part of the policy and any renewal or rewrite thereof." (*Id.*).

On February 28, 2008, while the Binder was in effect, but before the policy had been officially issued, Best for Less through its employee Osama Ayyoub sold alcohol to a minor. While intoxicated, the minor was involved in an automobile accident which resulted in the death of Samuel Garcia. On March 6, 2008, Tapco issued Policy Number TCN008768 (the "Policy"). The Policy expressly excluded coverage for liquor liability, including "furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol."

On December 15, 2009, the Estate of Samuel Garcia (the "Garcia Estate") initiated a civil action against Best for Less, the Debtors, and Osama Ayyoub seeking damages for

---

on a motion to dismiss. Because these documents are not central to the Court's resolution of the appeal, the Court need not decide whether these documents can be considered and refers to them only to provide a thorough discussion of the background of this case. The Court notes, however, that the Eleventh Circuit has stated, albeit in an unpublished decision, that "[a] . . . court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint." *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) (unpublished).

Mr. Garcia's death in Florida state court (the "Garcia lawsuit"). Nasser Ayyoub notified Appellees of the Garcia lawsuit on December 16, 2009, and sought coverage under the Policy. Appellees executed a non-waiver agreement, reserving their rights under the Policy while investigating the claim to determine their obligations. Appellees agreed to provide Best for Less, the Debtors, and Osama Ayyoub mutually agreeable defense counsel to defend the Garcia lawsuit pursuant to the reservation of rights.

On March 23, 2010, Appellees filed a declaratory judgment action in the federal district court for the Middle District of Florida to determine their obligations to defend and indemnify the defendants in the Garcia lawsuit under the Policy (the "declaratory judgment lawsuit"). *See Certain Underwriters at Lloyd's, London v. Best for Less Food Mart, Inc.*, No. 8:10-cv-688-T-30AEP (M.D. Fla. Mar. 23, 2010). The defendants failed to answer or otherwise appear in the case and a clerk's default was entered against them. On June 21, 2010, this Court entered an order granting default judgment in favor of Appellees and concluding that Appellees owed no duty to defend Best for Less, the Debtors, or Osama Ayyoub in the Garcia lawsuit.

Because the Garcia Estate had answered the complaint for declaratory judgment, Appellees moved for summary judgment. Summary judgment was entered in favor of Appellees because the Court concluded that the Policy's liquor liability exclusion barred coverage for the Garcia lawsuit as a matter of law. Therefore, the Appellees did not owe

any duty to defend or indemnify Best for Less, the Debtors, or Osama Ayyoub in the Garcia lawsuit. The case was closed on August 23, 2010.[3]

Appellees advised Best for Less, the Debtors, and Osama Ayyoub that they were withdrawing their defense in the Garcia lawsuit. Appellees' counsel moved to withdraw, and unopposed, the state court granted the motion. On February 22, 2011, the state court entered summary judgment against Best for Less, the Debtors, and Osama Ayyoub, finding that each defendant was liable for the "willful and wanton sale of alcohol to a minor in violation of Florida law resulting in the direct and proximate cause of the fatal injuries to Samuel Garcia III." Following a jury trial on damages, the jury awarded the Garcia Estate damages apportioned as follows: (1) $35,823,605.05 against Best for Less, (2) $250,765,235.35 against Nasser Ayyoub, (3) $35,823,605.05 against Wendy Ayyoub, and (4) $143,294,420.20 against Osama Ayyoub.

In December 2013, the Trustee filed an adversary proceeding in the bankruptcy court against Appellees seeking damages as a result of the judgment entered against the Debtors, their business, and their employee in the Garcia lawsuit. After the Trustee's first amended complaint was dismissed, the Trustee filed a second amended complaint. In Count I, the Trustee asserted that Appellees breached the Binder/Application (the Trustee collectively refers to these documents as a "confirmation of insurance"), which the Trustee contends provided coverage for the Garcia lawsuit separate and apart from the Policy. In Count II, the Trustee asserted that Appellees violated their fiduciary duty to the Debtors by

---

[3]On January 28, 2015, Appellant moved to vacate the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(4) arguing that the judgment was void because the Court lacked jurisdiction to entertain the claim for declaratory judgment. The motion was denied.

failing to provide conflict free counsel to each of the defendants in the Garcia lawsuit prior to their withdrawal of a defense.

Appellees moved to dismiss the second amended complaint, and on September 24, 2015, the bankruptcy court announced in a bench ruling that it was dismissing the second amended complaint with prejudice, concluding that as to Counts I and II the Application/Binder merged into the Policy and incorporated its terms, conditions, and exclusions, and there was no other agreement between the parties.  Finding that the Policy was the controlling agreement, the bankruptcy court concluded that Counts I and II were precluded under the doctrine of collateral estoppel based on the final decision rendered in the declaratory judgment lawsuit.  This appeal ensued.

## DISCUSSION

### I. Dismissal of Count I

The Trustee asserts that the bankruptcy court erred in concluding that the Application/Binder, which the Trustee contends provided insurance coverage on its own terms separate and apart from the Policy, merged with the Policy such that the terms of the Policy applied to determine whether coverage existed for the Garcia lawsuit.  Because the bankruptcy court found that the Trustee failed to demonstrate that the Application/Binder was an insurance contract separate and apart from the Policy, the bankruptcy court concluded that the Trustee's breach of contract claim was precluded by the doctrine of collateral estoppel based on the final judgment rendered in the declaratory judgment lawsuit.  Although the Court is inclined to agree with the bankruptcy court's conclusion in this regard, the Court need not reach the merits of the bankruptcy court's decision because

6

the Trustee's breach of contract claim under Count I is precluded by the doctrine of res judicata and the compulsory counterclaim rule.[4]

Because the declaratory judgment lawsuit was filed and adjudicated in the Middle District of Florida, the preclusive effect of that judgment is governed by Florida law. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (holding that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity" and "adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits"); *see also Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits.").[5]

The doctrine of res judicata (which is used in the present case to describe generally the preclusive effect of a prior judgment) "is founded upon the sound proposition that there should be an end to litigation and that in the interest of the State every justiciable controversy should be settled in one action in order that the courts and the parties will not

---

[4]The Court can "affirm the judgment of the [lower] court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the [lower] court." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012); *see also Fishermen Against Destruction of Env't, Inc. v. Closter Farms, Inc.*, 300 F.3d 1294, 1296-97 (11th Cir. 2002) (noting that a lower court's decision can be affirmed based "on any adequate ground, even if it is other than the one on which the court actually relied" (internal quotation marks omitted)).

[5]The Trustee asserts the declaratory judgment exception to the doctrine of res judicata applies. (Reply Br. at 14). However, the Trustee relies on law from the Eleventh Circuit applying federal preclusion principles instead of Florida preclusion principles. Although the Eleventh Circuit has noted that Florida law and federal law regarding the preclusive effect of prior judgments are "largely identical," *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1336-37 (11th Cir. 2014), Florida does not recognize the declaratory judgment exception to the doctrine of res judicata, and instead, the Florida Supreme Court has held that "a declaratory judgment is res judicata of all matters at issue between the parties and their privies." *Canal Ins. Co. v. Reed*, 666 So. 2d 888, 891 (Fla. 1996).

be pothered for the same cause by interminable litigation." *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952). The doctrine applies under Florida law "when all four of the following conditions are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in persons for or against whom claim is made." *Fla. Bar v. Rodriguez*, 959 So. 2d 150, 158 (Fla. 2007) (internal quotation marks omitted).

At issue in the present case is whether there is identity of the causes of action. Generally, "'[i]dentity of the causes of action is established where the facts which are required to maintain both actions are identical.'" *Gold v. Bankier*, 840 So. 2d 395, 397 (Fla. 4th DCA 2003) (quoting *Cole v. First Dev. Corp. of Am.*, 339 So.2d 1130, 1131 (Fla. 2d DCA 1976) (citing *Gordon*, 36 So. 2d at 776)). But the Florida Supreme Court has also applied a transactional test in res judicata cases to determine identity of the causes of action. *See Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1214 (Fla. 4th DCA 2005) (Gross, J., concurring); *Leahy v. Batmasian*, 960 So. 2d 14, 17 (Fla. 4th DCA 2007).

Under the transactional test, there is an identity of the cause of action not only as to every question which was decided in an earlier lawsuit, but "also as to every other matter which the parties might have litigated and had determined, within the issues as [framed] by the pleadings or as incident to or essentially connected with the subject-matter" of the first litigation. *Hay v. Salisbury*, 109 So. 617, 621 (1926). "This rule applies to every question falling within the purview of the original action, both in respect to matters of claim and defense, which could have been presented by the exercise of due diligence." *Id.*

In the declaratory judgment lawsuit, the issue as framed by the pleadings was whether Appellees had a duty to defend and indemnify the Debtors in the Garcia lawsuit. Although the declaratory judgment lawsuit looked specifically at whether such a duty arose pursuant to the Policy, the Application and Binder were part of the process used in ultimately obtaining the Policy. To the extent Debtors believed that the Application/Binder provided coverage for the Garcia lawsuit separate from the Policy, that question should have been raised as a defense or as a separate counterclaim in the declaratory judgment lawsuit. This claim—that the Binder/Application provided coverage for the Garcia lawsuit such that Appellees had a duty to defend and indemnify the Debtors in that cause of action—was essentially connected to the subject matter of the declaratory judgment lawsuit such that the Debtor's failure to raise it precludes subsequent litigation of that claim. The Trustee cannot argue in good faith that the Debtors lacked the facts necessary at the time of the declaratory judgment action to assert this defense or claim.

Under the facts of this case, it would be manifestly unjust to allow the Trustee to relitigate, years after the fact, the question already answered in the declaratory judgment lawsuit—whether Appellees had a duty to defend or indemnify the Debtors in the Garcia lawsuit. Had the Debtors asserted their right to receive a defense and indemnification from Appellees in the declaratory judgment lawsuit based on the Application/Binder theory, that argument would go to the same issue raised by the Appellees: whether coverage existed for the Garcia lawsuit. A finding in favor of the Debtors on that issue would have prevented the relief requested by Appellees in the declaratory judgment lawsuit—a declaration that

Appellees did not owe the Debtors a duty to defend and indemnify them in the Garcia lawsuit.

Even if the Trustee's claim had not satisfied the transactional test such that it was precluded by res judicata, the claim would still be waived as a compulsory counterclaim that should have been asserted in the declaratory judgment lawsuit. Florida law provides that the failure to bring a compulsory counterclaim precludes a subsequent lawsuit on that claim. *See Inter-Active Servs., Inc. v. Heathrow Master Ass'n, Inc.*, 809 So. 2d 900, 904 (Fla. 5th DCA 2002); Fla. R. Civ. P. 1.170(a). Specifically, Florida Rule of Civil Procedure 1.170(a) instructs: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."[6]

Among other considerations, a claim is part of the same transaction or occurrence such that it is compulsory if there is a logical relationship between the claim and the counterclaim. *See Londono v. Turkey Creek, Inc.*, 609 So. 2d 14, 20 (Fla. 1992).

> "[A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."

*Id.* (quoting *Neil v. S. Fla. Auto Painters, Inc.*, 397 So. 2d 1160, 1164 (Fla. 3d DCA 1981)). In Florida, the "aggregate of operative facts" that can serve as a basis for a compulsory

---

[6]Florida's rule governing compulsory counterclaims is modeled after the federal rule. *See* Fed. R. Civ. P 13(a). Because the law governing compulsory counterclaims is the same under federal and Florida law, the Court need not specifically determine which rule applies, and will refer to both federal and Florida law addressing compulsory counterclaims.

10

counterclaim has been broadly construed because the rule "is designed to foreclose the possibility of duplicative litigation . . . . [and] Florida courts encourage a 'broad, realistic interpretation of the rule.'" *Puff 'N Stuff of Winter Park, Inc. v. Fed. Trust Bank, F.S.B.*, 945 F. Supp. 1523, 1530 (M.D. Fla. 1996) (quoting *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 (11th Cir. 1991)). "The hallmark of this approach is its flexibility." *Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979) (internal quotation marks omitted).[7]

Here, the Trustee's claim arises out of the same transaction and occurrence that was the subject matter of the declaratory judgment action—i.e., whether Appellees were required to defend and indemnify the Debtors in the Garcia lawsuit—because it arises out of the same aggregate of operative facts. *Cf. Educ. Mgmt., Inc. v. Scottsdale Ins. Co.*, 264 F. App'x 376, 377 (5th Cir. 2008) (concluding that a claim that coverage arose under a different policy was a compulsory counterclaim and precluded from being raised in subsequent litigation where the party failed to raise the claim in a prior declaratory judgment action regarding the issue of insurance coverage under a different policy). Nothing prevented the Debtors from seeking coverage under this Application/Binder theory in the declaratory judgment lawsuit.

The Trustee argues that the breach of contract claim is not waived as a compulsory counterclaim because the claim was not mature at the time the declaratory judgment lawsuit was filed. According to the Trustee, the claim did not mature until Appellees breached the

---

[7]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Application/Binder by withdrawing their defense in the Garcia lawsuit following the final decision in the declaratory judgment lawsuit. The Trustee's assertion is based on an overly strict interpretation of the compulsory counterclaim rule.

Currently, the Trustee asserts a claim for breach of contract. For the Trustee to succeed on a breach of contract claim under Florida law, the Trustee must demonstrate: (1) the existence of a contract under the Application/Binder providing coverage for the Garcia lawsuit, (2) breach of that contract, and (3) damages. *Cf. Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (applying Florida law). But if the Debtors had counterclaimed for declaratory judgment in the declaratory judgment lawsuit based on the Application/Binder theory of coverage, the Debtors would have been required to demonstrate a right to coverage which would have in turn required them to demonstrate the existence of a contract under the Application/Binder. *See Tindall v. Allstate Ins. Co.*, 472 So. 2d 1291, 1292 (Fla. 2d DCA 1985) ("Disagreements concerning coverage under insurance policies are proper subjects for a declaratory judgment.").

The essential element required to succeed under an action for declaratory judgment is the same essential element at issue in the Trustee's breach of contract claim. In other words, the breach of contract claim would require resolution of whether the Application/Binder provided coverage for the Garcia lawsuit, which is the same question that would have been resolved upon declaratory judgment had the Debtors asserted that counterclaim in the declaratory judgment lawsuit. Thus, the breach of contract claim has a logical relationship to the declaratory judgment lawsuit because a claim for declaratory judgment on the Application/Binder theory was a compulsory counterclaim in that action

and resolution of that claim would resolve the essential element of the Trustee's breach of contract claim. This interpretation upholds the purpose of the compulsory counterclaim rule in that it minimizes the litigation and prevents a multiplicity of suits as to the very same subject matter—whether Appellees had a duty to defend and indemnify the debtors in the Garcia lawsuit.

The Trustee's breach of contract claim is precluded from the adversary action because it is either barred under the doctrine of res judicata or as a compulsory counterclaim that should have been asserted in the declaratory judgment lawsuit. Although the bankruptcy court dismissed this claim on different grounds, because the Trustee's claim should have been precluded, the bankruptcy court's dismissal of this claim should be affirmed.

## II.  Dismissal of Count II

The Trustee contends that the bankruptcy court erred in dismissing Count II because Appellees had a duty to provide conflict free counsel during the period Appellees were defending the Debtors under a reservation of rights regardless of whether it was ultimately determined that Appellees had no duty to defend or indemnify the Debtors. The Trustee correctly asserts that where an insurer undertakes to defend a lawsuit on behalf of its insureds, the insurer owes a fiduciary duty to make decisions regarding the handling of the litigation in good faith and with due regard for the insureds' best interests.[8] *See Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 668-69 (Fla. 2004). Because the Garcia lawsuit was filed

---

[8]The parties contest whether this duty applies where it is found that the insurance policy does not provide coverage. Because the resolution of this issue is not dispositive, the Court assumes for the purpose of this appeal that Appellees owed the Debtors a duty of good faith while defending the Debtors pursuant to a reservation of rights.

13

against Best for Less, the Debtors, and Osama Ayyoub, the Trustee argues that in holding with their fiduciary duty, Appellees were required to appoint counsel for each defendant to avoid conflicts of interest. Namely, because Florida employs a comparative fault system which allows for apportionment of fault among all the parties, the Trustee claims that the Debtors were prejudiced by the assignment of a single defense counsel for all defendants in the Garcia lawsuit.

The Trustee relies on *University of Miami v. Great American Assurance Co.*, 112 So. 3d 504 (Fla. 3d DCA 2013), for the proposition that Appellees were required to appoint independent counsel for each defendant in the Garcia lawsuit. But the facts of *Great American* differ from the facts of the present case. In *Great American*, the University of Miami ("UM") and MagiCamp were named insureds under an insurance policy issued by Great American Assurance Co. ("Great American"). *Id.* at 505. When UM and MagiCamp were sued for personal injuries covered under the policy, Great American appointed one law firm to represent both insureds. MagiCamp filed an answer asserting that the injuries were caused by the fault of UM and requesting apportionment of damages based on the percentage of fault and requested indemnification and contribution from UM for damages.

UM informed Great American that there was a conflict of interest in single representation of UM and MagiCamp and requested that Great American appoint UM independent counsel. *Id.* at 506. Great American refused taking the position that no conflict of interest existed. The appellate court concluded that a conflict of interest did exist because the two insureds had adverse legal theories of defense and counsel would have been forced to argue conflicting legal positions. *Id.* at 507-08.

Contrary to the Trustee's assertion, *Great American* does not stand for the proposition that the apportionment of fault among defendants creates a conflict of interest.[9] If that were true, there would be a conflict of interest in almost every case where an insurer appoints counsel to represent multiple parties.[10]  That position is simply untenable under Florida law.  The problem in *Great American* was that the two insureds' positions were diametrically opposed in that each insured asserted that the other insured was completely at fault.  The same is not true of the present case.  Unlike the insureds in *Great American*, the Trustee has not established that the theories of defense relied upon by the defendants in the Garcia lawsuit were adverse.

Even if the Debtors were entitled to independent counsel, the Trustee has not demonstrated how the failure to appoint independent counsel resulted in damages to the Debtors, especially damages for the entirety of the judgment entered against the Debtors. Appointed counsel withdrew before the issue of apportionment of fault was decided, and the Trustee has not shown that appointed counsel failed to raise a defense or claim that would have limited the Debtors' liability in the Garcia lawsuit

Because the Trustee has not established that a conflict of interest existed, the Debtors were not entitled to appointment of independent counsel in the Garcia lawsuit and the bankruptcy court did not err in dismissing Count II.

---

[9]In fact, the court in *Great American* took great pains to point out that the holding was limited to the unique facts of that case.  *Great American*, 112 So. 3d at 508.

[10]Appellant tries to avoid this consequence by asserting that the duty to appoint counsel for each defendant would only arise where it appears that damages will be within the policy limits.  The addition of this limitation is unavailing.

## **CONCLUSION**

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1. The bankruptcy court's order dismissing Counts I and II of The Trustee's second amended complaint is AFFIRMED.

2. The Clerk is directed to terminate any pending motions as moot and close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 10th day of February, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record